# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHANEL KERSWILL, on behalf of herself and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| MODERN BROKERS OF AMERICA LLC, a Texas limited liability company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Chanel Kerswill (hereinafter referred to as "Plaintiff" or "Kerswill"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act

of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Modern Brokers of America (hereinafter referred to as "Defendant" or "Modern Brokers of America") to market its services through the use of automated telemarketing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. The recipients of Modern Brokers of America's illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA, and because the technology used by Modern Brokers of America makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

4. Plaintiff Kerswill is a resident of Lakeland, Florida.

5. Defendant Modern Brokers of America LLC is a Texas limited liability company. Defendant conducts business in this district, Florida and throughout the U.S.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over the TCPA claim pursuant to 28 U.S.C. § 1331, as the action arises under Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

7. This Court has personal jurisdiction over the Defendant and the venue is proper because the Defendant conducts business in this District and the wrongful conduct giving rise to this case was directed by the Defendant and received by the Plaintiff in this District.

## INTRODUCTION

8. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

9. 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited April 6, 2022).

13. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

18. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **COMMON ALLEGATIONS**

19. Defendant Modern Brokers of America is a "person" as the term is defined by 47 U.S.C. § 153(39).

20. Defendant Modern Brokers of America helps other solar energy businesses with customer acquisition by generating leads for them.[3]

21. Defendant Modern Brokers of America's claims they obtain "new customers through cold calling" for other businesses:

---

[3] https://modernbrokersofamerica.net/service/


[4]


[5]

22. Defendant Modern Brokers of America's employees have posted reviews online about their experience of working at Modern Brokers of America. Defendant has acknowledged these reviews and has chosen to respond to many of them. It is abundantly clear from these reviews and Defendant Modern Brokers of America's response to them that the Defendant:

- Spends thousands of dollars on purchasing leads.
- Hires employees with expectations of making 200 cold calls each day.

---

[4] https://www.modernbrokersofamerica.net/
[5] https://www.instagram.com/modern_brokers_of_america/?hl=en

- Makes its employees place cold calls to consumers using their own personal cellphones.
- Does not have or maintain any internal Do Not Call policy, on the contrary Defendant makes its employees call consumers repeatedly until they get an appointment, willingly neglecting to acknowledge any stop requests made by the consumers.

Defendant Modern Brokers of America's employee reviews include, for instance:[6]

> **2.0** ★★☆☆☆ **Might be good for some but not for all.**
> Sales Representative (Former Employee) - Dallas, TX - February 8, 2022
>
> MBA management cares. However <u>the expectation of 200 calls a day is ridiculous when all their leads are old leads of people constantly yelling to leave me alone/stop calling… the appointments people get are because they are tired of the calls and scheduling an appointment they think will make it stop.</u> They train you over the course of the weeks. They need to give a full training before asking you to sell. How can you sell a product you really don't know. If you make a sale, great! You better hope that in the 6-8 weeks before the product is installed that the customer doesn't cancel. If they do… then the advance has to be paid back. However, the commission structure is Awesome!
>
> ✓ **Pros**
> Management support, friendly staff
>
> ✗ **Cons**
> <u>Personal phone usage</u>, no pay or benefits.

-

---

[6] https://www.indeed.com/cmp/Modern-Brokers-of-America/reviews

- **1.0 ★☆☆☆☆ Good side gig**

  Sales Representative (Former Employee) - The Woodlands, TX - September 28, 2021

  Good compensation, <u>but cold leads</u> and poor management. The managers don't look to improve your success. Most new hires stick around a week or two. They kinda just wait for you to die out, they wait till your "DEAD", if you will.

  Was this review helpful?

  Yes 11   No 1                                                     Report   Share

  > ✓ **Official response from modern brokers of america**
  > October 7, 2021
  >
  > Anyone who works hard and sets quality appointments <u>get fresh hot leads.</u>
  >
  > It's performance based so <u>the better the performance the more leads.</u> However, <u>everyone regardless of performance gets access to all the leads they're just a day old or older.</u>

- **1.0 ★☆☆☆☆ The Worst Company on Earth!**

  Sales Manager (Former Employee) - Tampa, FL - November 4, 2021

  In a typical day I was taught <u>unethical business practices such as customer manipulation</u> and hidden terms in user agreements. I did not learn anything I can be proud of which is embarrassing. The workplace culture is toxic. I witness management engage in not welcomed behavior with staff on a day-to-day basis. The hardest part of the job is <u>having to compete with your coworkers on calling "lukewarm" leads in the Sales rabbit app and the company forces you to call these customers regardless of if they demand or beg you not to do it anymore</u>. Management also engage in credit pulls without the customer's permission and they tell their team to forge signatures using Good Leap. There is no base pay, no health insurance and parking are not free. This is not a work from home position. You will have to pay your advances back if the customer cancels and trust me they will. The money is decent if you are willing to con people into signing 20–30-year loans with no conscience.

  ✓ **Pros**
  Nothing

  ✗ **Cons**
  Unethical Business Practices

8

**1.0** ★☆☆☆☆

### Promises a lot but doesn't deliver

Broker (Former Employee) - Houston, TX - December 11, 2021

I was excited to start here but quickly learned it wasn't going to go anywhere. They don't give you your own leads unless you can close a deal with their old ones. The ones that are tired of being called and repeatedly ask to be taken off the list. We are not even allowed to remove them from the list. We are forced to call 200 of these old leads a day and if you don't close one, you are fired.
They do not train. I saw my manager maybe twice the whole time I was there. I sat in on other managers trainings. Waste of a ton of gas.

✓ **Pros**
Met some solid people/colleagues.

✗ **Cons**
Designed to fail. Drinking on the job. Nepotism.

Was this review helpful?

Yes 37    No 1                                    ⚑ Report    ⬆ Share

---

✓ **Official response from modern brokers of america**
December 16, 2021

No one is forced to do anything. The law of averages on the day old or older leads show that if you want to make over 200k as advertised then you have to work 50+ hours a week.

200 calls is about 4 hours a day. We set clear expectations that we expect you to make calls for 4 hours a day in return you will make over 200k. Most think that is a great deal others fail to work hard.

You said we do not train yet you sat in other managers trainings? We have two training classes every day in the office with rotating managers giving different perspectives. We've received awards on our training system multiple times.

If you only saw your manager twice then that means you worked here for less than 2 weeks probably only a week.

Lastly, can you provide 1 example of nepotism please.

•

- 

- ### 2.0 ★★☆☆☆ most people quit after 2 weeks
  Sales Associate (Former Employee) - Houston, TX - July 1, 2021

  VERY competitive, <u>young individuals that spend their days cold calling</u> until they get appointments to client's homes. Most appointments are far so if you're not busy calling clients all day with your personal cellphone then you spend a lot of time driving to them wasting your gas.

  ✓ **Pros**
  Bonuses, prizes, nice commission

  ✗ **Cons**
  no base pay, have to wait months for your commission, terrible management, spend all your money on gas, no insurance or any benefits

  Was this review helpful?
  Yes 19   No                                    🏳 Report   ↑ Share

  > ✅ **Official response from modern brokers of america**
  > December 16, 2021
  >
  > We pay advances the following Friday after sales are made. The rest is paid on install. Waiting months before getting any commissions is just not true.

- ### 1.0 ★☆☆☆☆ Long Drives, Unethical practices, No Pay!
  Sales Representative (Former Employee) - Spring, TX - December 22, 2021

  Nothing at this place is anything of all ethical, beyond that you're working for free till you make a sell. The advancements you get paid by the sales you make are having to be paid back and if the customers cancel. The job positions are a joke, there's some investing you have to do with this job. Don't expect to get paid. I sold for this company and they still refuse to pay me even after I did everything that was expected of me to get keep the customer's sales. The Interviews are a joke because they hire by bulk. As long as you have a pulse you can get hired on here. <u>All they're looking for is a free unpaid call center</u>. Because they force all your deals to be half deals till they decided you can by yourself regardless of how much sales experience you have. If you leave say goodbye to all the work you did and sales you made don't expect to get paid for the work you did. Now the person who was forced to get half with your deal gets the whole deal.

  ✓ **Pros**
  Nothing

  ✗ **Cons**
  No insurance, Job security, Weak Market, <u>mildly warm leads</u>

- 

23. Neither the Plaintiff nor any other members of the proposed classes ever provided Defendant and/or their agents with prior express written consent to receive the telephone calls at issue.

## **PLAINTIFF KERSWILL'S ALLEGATIONS**

24. Plaintiff Kerswill registered her cell phone with the National Do Not Call Registry on February 1, 2016.

11

25. Plaintiff Kerswill uses her cell phone for personal use only. It is not used as a business number.

26. In July and August 2021, Plaintiff Kerswill received multiple unwanted telephonic sales calls from Defendant Modern Brokers of America to her cell phone, soliciting solar installation for her home.

27. Plaintiff Kerswill kept receiving solicitation calls from Defendant Modern Brokers of America despite conveying her disinterest in their products and instructing the Defendant's agents not to call her at least 4 times.

28. On August 12, 2021, at 12:51 PM, Plaintiff Kerswill received yet another phone call from Defendant Modern Brokers of America to her cell phone. The call was placed using the phone number, 727-453-8673. Area code 727 is a Florida area code.

29. Plaintiff Kerswill answered the call and spoke to an agent named Logan, who was soliciting solar home installation to her and identified his company as Defendant Modern Brokers of America.

30. Plaintiff Kerswill told the agent that she was not interested in their services, and she had already instructed other employees of Defendant Modern Brokers of America to stop calling her phone number at least 4 times. She also informed the Defendant's agent that her cell phone number was on the DNC, and

she should not have received those calls in the first place.

31.     Plaintiff's cell phone's call logs show that she received three calls from the same phone number, 727-453-8673, at 12:51 PM:



32.     Plaintiff Kerswill received multiple unsolicited telemarketing calls from Defendant Modern Brokers of America within a 12-month period, to her cell phone which was registered on the DNC, without having given her consent to receive any calls from the Defendant.

33.     Plaintiff Kerswill does not have an existing business relationship with Defendant Modern Brokers of America.

34.     The unauthorized telephonic sales calls that Plaintiff received from and/or on behalf of the Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to wear and tear of the phone's hardware

(including the phone's battery) and the consumption of memory on the phone.

35. In response to these unwanted solicitation calls, Plaintiff files this lawsuit seeking injunctive relief requiring the Defendant to cease violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of herself and the following class pursuant to Federal Rule of Civil Procedure 23.

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's cell phone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reasons Defendant called Plaintiff.

37. Plaintiff Kerswill is a member of and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the Class members.

38. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

39. Plaintiff and all members of the Class have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, the use of their data plans, and the intrusion on their telephone that occupied it from receiving legitimate communications.

40. This Class Action Complaint seeks injunctive relief and money damages.

41. The Class as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

42. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes the Class members number, at minimum, in the hundreds if not in the thousands.

43. The joinder of all members of the Class is impracticable due to the size and relatively modest value of each individual claim.

44. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

45. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    (a)    whether Defendant made telemarketing calls without first obtaining prior express written consent;

    (b)    whether Defendant systematically made telemarketing calls to the telephone numbers registered with the National Do Not Call Registry;

    (c)    whether Defendant's calls constitute a violation of the TCPA; and

    (d)    whether the Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

46.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests which are antagonistic to any member of the Class.

47.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so.

48.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question

concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

49. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## COUNT I
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227**
**On Behalf of Plaintiff Kerswill and the Do Not Call Registry Class**

50. Plaintiff repeats and realleges paragraphs 1 through 49 of this Complaint and incorporates them by reference.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

53. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

55. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services to numbers on the National Do Not Call Registry in the future;

b) That the Court enter a judgment awarding Plaintiff and all class members statutory damages for each violation of the TCPA;

c) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

d) Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: May 2, 2023.          Respectfully submitted,

By: /s/ Stefan Coleman

Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
**Coleman PLLC**
66 West Flagler Street, Suite 900
Miami, Florida 33130
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman, Esq. (FL Bar no. 84382)
**KAUFMAN P.A**
237 South Dixie Hwy, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
(305) 469-5881

*Counsel for Plaintiff and all others similarly situated*